# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

CASEY J WARDEN, and
KATHY D. WARDEN,

    Plaintiffs,

v.                                                                    Civil Action No. 3:10-CV-75
                                                                      (BAILEY)

PHH MORTGAGE CORPORATION,
and FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court is Defendant Federal National Mortgage Association's Motion to Dismiss [Doc. 4] and Defendant PHH Mortgage Corporation's Motion to Dismiss [Doc. 6], both filed August 13, 2010. The plaintiffs responded on August 30, 2010, and the defendants replied on September 9, 2010. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendants' motions should be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

### I. Factual Allegations

The plaintiffs, Casey and Kathy Warden, allege the following facts in the challenged Complaint [Doc. 3-1]. In 2001, Mrs. Warden inherited a home in Charles Town, West Virginia, from her father. ([Doc. 3-1] at ¶ 5). At some point thereafter, Mrs. Warden deeded a half interest in the property to Mr. Warden. (Id. at ¶ 6). In August 2007, Mr. Warden

1

entered into a loan agreement with PHH Mortgage Corporation ("PHH"), pursuant to which the home served as security and the plaintiffs shared the proceeds. (Id. at ¶ 7). Mr. Warden lived in the home and was primarily responsible for making the monthly payments, which were approximately $1,056.93 for principal, interest, taxes, and insurance. (Id. at ¶ 8).

In early 2009, Mr. Warden became unemployed and struggled to make payments. Thereafter, Mr. Warden called PHH and attempted to tender $3000. PHH declined the payment and stated it would not accept partial payments. (Id. at ¶ 9). In May 2009, Mr. Warden received paperwork suggesting a loan modification. (Id. at ¶ 10). The documents directed Mr. Warden to make trial payments of $779.30 on June 10, 2009, and then in August and September 2009, after which time PHH would review the loan for permanent modification. (Id. at ¶ 11). Mr. Warden made the payments as agreed and after not hearing back from PHH, continued to make payments of $779.30 in October and November 2009. (Id. at ¶ 12).

In December 2009, PHH sent Mr. Warden correspondence that indicated his application for a loan modification had been denied. (Id. at ¶ 13(a)). The letter further provided that Mr. Warden should pay $1,056.93 (original payment amount) for his December 2009 payment, plus: (1) approximately $300 for the November 2009 payment and (2) an additional amount for certain fees assessed to the account. (Id. at ¶ 13(b)). Before the end of December 2009, Mr. Warden tendered to PHH a payment of $1,600, which PHH represented to be sufficient to bring his loan current. (Id. at ¶ 14).

Meanwhile, the plaintiffs received a notice that their home would be sold at a foreclosure sale in January 2010. (Id. at ¶ 15(a)). The notice of foreclosure stated that the

loan was twelve months in arrears. (Id. at ¶ 15(b)). Based upon the representations of PHH, the plaintiffs believed the foreclosure sale would be cancelled upon Mr. Warden's December 2009 payment of $1,600. (Id. at ¶ 16). However, despite PHH's representations, the plaintiffs' home was sold at foreclosure on January 12, 2010. (Id. at ¶ 17). The plaintiffs learned of the sale that month, when they received a notice on the door of their home from a realtor. (Id. at ¶ 18). The plaintiffs attempted unsuccessfully to resolve the dispute with PHH and their foreclosure counsel. (Id. at ¶ 19).

The plaintiffs allege that Federal National Mortgage Association ("Fannie Mae") is the current holder of the loan in dispute and the owner of the property which served as the security for the loan. (Id. at ¶ 4). The plaintiffs further allege that PHH, the original lender and servicer, acted as an agent of Fannie Mae at all times relevant to this dispute. (Id. at ¶¶ 3,4).

## II. Procedural History

On June 28, 2010, the plaintiffs brought suit in the Circuit Court of Jefferson County, West Virginia, against PHH and Fannie Mae. The Complaint [Doc. 3-1] contains four counts: (1) breach of contract, based upon the implied covenant of good faith and fair dealing; (2) estoppel; (3) violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W.Va. Code § 46A-2-122, *et seq*; and (4) negligence. On August 6, 2010, the defendants removed the above-styled action to the United States District Court for the Northern District of West Virginia based upon diversity jurisdiction [Doc. 3].

On August 13, 2010, PHH and Fannie Mae moved to dismiss for failure to state a claim upon which relief may be granted [Docs. 4, 6]. Fannie Mae argues that the plaintiffs have failed to state a plausible claim against it because: (1) the plaintiffs allege no wrongful

3

conduct on the part of Fannie Mae and (2) the plaintiffs' allegation of agency is insufficient to state a claim against Fannie Mae. ([Doc. 5] at 1-4). Otherwise, Fannie Mae and PHH present substantially identical arguments in support of the dismissal of each count in the Complaint. First, the defendants argue that Count I should be dismissed because: (1) there is no claim for breach of the implied covenant of good faith and fair dealing absent a claim for breach of contract; (2) they did not interfere with any right or benefit conferred to the plaintiffs under the loan contract; (3) the plaintiffs have no damages; and (4) because the plaintiffs breached the contract (default), they cannot claim a breach of contract. ([Docs. 5, 7] at 4-10, 2-8). PHH adds that it cannot be held liable for breach of contract because the plaintiffs have alleged Fannie Mae is the current holder of the loan. ([Doc. 7] at 8-9).

Second, the defendants argue that Count II should be dismissed because estoppel is not a cause of action, but an equitable defense. ([Docs. 5, 7] at 11-12, 9-10). Third, the defendants argue that Count III should be dismissed because misstating the amount needed to bring a loan current and the number of months a borrower is past due are not violations of the WVCCPA. ([Docs. 5, 7] at 12-14, 10-12). Fourth, the defendants argue that Count IV should be dismissed because the defendants owed no duty to provide accurate account information and accurate notice of the payment due. ([Docs. 5, 7] at 14-15, 12-14).

On August 30, 2010, the plaintiffs filed a Response [Doc. 10], arguing that they have sufficiently stated claims upon which relief may be granted. The plaintiffs contend that they have adequately pled a principal/agent relationship existed between Fannie Mae and PHH, citing, *inter alia*, their allegations that the latter serviced a loan held by the former. ([Doc. 10] at 5-7). Next, the plaintiffs assert that Count I should proceed because they have

alleged a breach of contract. (Id. at 7). Specifically, the plaintiffs state that the defendants violated the Deed of Trust [Doc. 10-1] in four separate ways: (1) by refusing payments in bad faith, (2) by exercising their discretion to provide a loan modification in bad faith, (3) by misrepresenting the amount needed to reinstate the loan, and (4) by exercising their discretion to foreclose in bad faith. (Id.). Violations (1), (2), and (4), the plaintiffs argue, represent breaches of the implied covenant of good faith and fair dealing. (Id. at 8-11). In this regard, the plaintiffs also argue that their damages include, *inter alia*, losing title to their home, and that their default was a non-material breach which did not excuse the defendants' performance. (Id. at 11-13).

The plaintiffs also argue that Counts II, III, and IV should proceed. First, the plaintiffs contend that West Virginia recognizes estoppel as a cause of action, but they pled the count as an equitable defense. (Id. at 13). Second, the plaintiffs argue that PHH's misrepresentations regarding the amount necessary to cure default and the number of months in arrearage were fraudulent, deceptive, or misleading representations of the character, extent, or amount of PHH's claim against them, in violation of W.Va. Code § 46A-2-127(d). (Id. at 14-15). Lastly, the plaintiffs assert that they have sufficiently pled negligence based upon a duty created by their special relationship with PHH. (Id. at 15-18).

Finally, on September 9, 2010, the defendants filed replies in support of their motions to dismiss [Docs. 11, 12]. In so doing, the defendants reassert, and provide supplemental support for, their previous arguments in favor of dismissal.

**DISCUSSION**

I.  **Motion to Dismiss Standard**

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true. ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." ***Bell Atl. Corp. v. Twombly***, 127 S. Ct. 1955, 1974 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." ***Ashcroft v. Iqbal***, — U.S. —, 129 S. Ct. 1937, 1949 (May 18, 2009)(internal quotations and citations omitted).

Additionally, a 12(b)(6) motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56(c) where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Here, in addition to the Complaint, the parties have presented to the Court four exhibits: (1) the Trustee's deed to

6

Fannie Mae, (2) the Deed of Trust, and (3) a news release titled "Fannie Mae Provides New Servicer Flexibility to Help Borrowers Avoid Foreclosure." First, the Court notes that consideration of the Deed of Trust does not convert the motions to dismiss into ones for summary judgment. Because the Deed of Trust is referenced in the plaintiffs' Complaint, it is not considered "outside the pleadings." See **Henschke v. New York Hospital-Cornell Medical Ctr.**, 821 F.Supp. 166 (S.D.N.Y. 1993) (holding that court could consider documents relating to EEOC without converting motion to dismiss into motion for summary judgment). However, in consideration of the 12(b)(6) motions, the Court has elected to exclude the other exhibits, making a summary judgment standard inapplicable to the defendants' motions. See Fed. R. Civ. P. 12(d).

## II. Analysis

In their motions, the defendants move to dismiss the Complaint for failure to state a claim upon which relief may be granted. The defendants provide support for dismissal of each count, while the plaintiffs contend that each count should proceed. Below, the Court will consider each count, in turn. First, however, the Court must address whether the plaintiffs have sufficiently pled that a principal/agent relationship existed between Fannie Mae and PHH.

### A. Agency

In their Complaint, the plaintiffs allege that PHH acted as agent for Fannie Mae. Specifically, the plaintiffs allege that, "Fannie Mae is the current holder of the Plaintiffs' loan and the owner of the property that is the subject of this dispute. At all times relevant to this action, the loan servicer [PHH] has acted as agents for . . . Fannie Mae." ([Doc. 3-1] at ¶

4).

In its motion to dismiss, Fannie Mae argues that the plaintiffs have insufficiently pled that an agency relationship existed. In particular, Fannie Mae contends that the plaintiffs' allegation of agency is conclusory because they have failed to provide any supporting factual allegations. In response, the plaintiffs argue that they have provided sufficient factual allegations in support of their theory of agency by alleging that PHH acted as the servicer of a loan held by Fannie Mae. In this regard, the plaintiffs contend, "By its very nature, a servicer acts as the agent of a loan holder by collecting payments due under the loan and providing other services upon the default of the borrower." ([Doc. 10] at 6). In reply, Fannie Mae reasserts its argument that the plaintiffs have alleged inadequate factual support that it acted as the principal of PHH. In particular, Fannie Mae argues that the plaintiffs have failed to provide sufficient factual allegations to support the element of control necessary to find a principal/agent relationship.

Upon careful consideration of the above, the Court finds that the plaintiffs have sufficiently pled that a principal/agent relationship existed between Fannie Mae and PHH. In so finding, this Court considers true, as it must, the plaintiffs' allegation that PHH acted as the servicer of a loan held by Fannie Mae.

In West Virginia, "[t]here are four general factors which bear upon whether a master-servant relationship exists for purposes of the doctrine of *respondeat superior*: (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative." **Paxton v. Crabtree**, 184 W.Va. 237, 245, 400 S.E.2d 245, 253 (1990). Stated another way, "one of the essential

elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent." **Teter v. Old Colony Co.**, 190 W.Va. 711, 720, 441 S.E.2d 728, 737 (1994). Finally, "[p]roof of an express contract of agency is not essential to the establishment of the relation. It may be inferred from the facts and circumstances, including conduct." **General Elec. Credit Corp. v. Fields**, 148 W.Va. 176, 181, 133 S.E.2d 780, 783 (1963).

In the instant case, the plaintiffs allege that PHH serviced a loan held by Fannie Mae, and did so as an agent. Accepting these allegations as true, the Court finds that PHH could have plausibly acted as Fannie Mae's agent. Whether Fannie Mae had some degree of control over the conduct and activities of PHH is a question to be answered in discovery. At this stage, however, the plaintiffs have sufficiently pled the existence of agency.

### B.  Count I: Breach of Contract

In Count I, the plaintiffs appear to assert two claims under the heading "Breach of Contract": an express breach of contract claim and a claim that the defendants breached the implied covenant of good faith and fair dealing. The plaintiffs contend that PHH, and thus Fannie Mae, breached "their contractual duty" in four respects: (1) by "representing to Plaintiffs to make an amount to bring their account current, then foreclosing after payment of this amount"; (2) by "[m]isrepresenting the amount due to reinstate Plaintiffs' loan"; (3) by "[e]xercising their discretion to provide a loan modification in bad faith"; and (4) by "exercising their discretion to foreclose in bad faith." ([Doc. 3-1] at ¶ 23).

The defendants contend that both claims in Count I are deficient. The Court now addresses each claim, in turn.

### 1. Express Breach of Contract

The defendants argue that the plaintiffs have failed to plead an express breach of contract. Viewing Count I in a light most favorable to the plaintiffs, however, this Court disagrees.

In Count I, the plaintiffs allege that the defendants breached "their contractual duty" by "representing to Plaintiffs to make an amount to bring their account current, then foreclosing after payment of this amount".[1] ([Doc. 3-1] at ¶ 23). In other words, the plaintiffs allege that they promised to pay the defendants a certain amount in exchange for the defendants' promise to consider their loan current. The plaintiffs then performed by paying the amount requested. The defendants failed to perform, and thus breached the parties' agreement, by seeking foreclosure. (Id. at ¶¶ 10-17). Considering these allegations in a light most favorable to the plaintiffs, this Court finds that the plaintiffs have sufficiently stated a claim for express breach of contract. Accordingly, Count I **MAY PROCEED** insofar as it alleges said claim.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

Next, the defendants assert that the plaintiffs' claim for breach of the implied covenant of good faith and fair dealing also lacks merit. The defendants contend that West Virginia does not recognize an independent claim based upon the implied covenant of good faith and fair dealing. Instead, such a claim must be based on express contractual provisions.

---

[1] The Court finds that the plaintiffs' allegation that the defendants misrepresented the amount due to reinstate their loan is subsumed in this allegation of an express breach of contract. As such, the allegation of misrepresentation requires no separate discussion.

10

The plaintiffs assert that their claim based on breach of the implied covenant of good faith and fair dealing is not a stand-alone claim. Rather, they maintain, it is part of their "breach of contract" claim. Specifically, the plaintiffs state that the defendants breached the Deed of Trust by: (1) exercising their discretion to provide a loan modification in bad faith and (2) exercising their discretion to foreclose in bad faith.[2]

In West Virginia, a covenant of good faith and fair dealing is implied in every contract for the purposes of evaluating a party's performance of that contract. ***Knapp v. American General Finance, Inc.***, 111 F.Supp.2d 758, 767 (S.D. W.Va. 2005); ***Hoffmaster v. Guiffrida***, 630 F.Supp. 1289, 1290 (S.D. W.Va. 1986). "When a contract confers discretion on one of the parties that affects the rights of the other, that discretion must be exercised in a reasonable manner based upon good faith and fair play." ***Strategic Outsourcing, Inc. v. Cont'l Cas. Co.***, 274 Fed.Appx. 228 (4th Cir. 2008) (internal quotations and citations omitted). West Virginia law does not recognize an independent cause of action for a breach of duty of good faith and fair dealing separate and apart from a breach of contract claim. ***Stand Energy Corp. v. Columbia Gas Transmission Corp.***, 373 F.Supp.2d 631, 644 (S.D. W.Va. 2005). In so recognizing, the court in ***Stand*** cited ***Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc.***, 299 F.Supp.2d 505, 518 (D. Md. 2004), which found that "[a]lthough a plaintiff may state a claim for breach of contract under Michigan law [based upon] a breach of the implied duty of good faith and

---

[2]In their Response, the plaintiffs also argue that they have stated a breach of contract claim based upon the defendants' bad faith refusal to accept payment. Though the plaintiffs allege in their "Statement of Facts" that PHH refused to accept a $3,000 payment in early 2009, the plaintiffs fail to include this allegation as support for a breach of contract claim in Count I. As such, this claim is not properly before the Court.

fair dealing, breach of the duty does not supply an independent cause of action . . ..″ Relying in part on this favorable citation, this Court has found that "under West Virginia law a plaintiff can allege a valid claim for breach of contract, *alleging as the grounds for recovery* that defendant breached its duty of good faith and fair dealing." **Manning v. Wells Fargo, N.A., et al.**, Civil Action No. 1:09-CV-83, Order Denying in Part and Granting in Part Defendant's Motion to Dismiss, pp. 10-11 (N.D. W.Va. Sept. 24, 2009) (emphasis in original).

Upon careful consideration of the above, the Court finds that the plaintiffs have stated a valid breach of contract claim, alleging as the grounds for recovery, that the defendants breached the implied covenant of good faith and fair dealing. Specifically, the plaintiffs have sufficiently alleged that the defendants exercised their discretion to deny a loan modification and instead seek foreclosure in bad faith.

The plaintiffs allege that the Deed of Trust granted PHH (original lender) and thereafter Fannie Mae (current holder) the discretion to grant a loan modification instead of seeking foreclosure. The plaintiffs allege that PHH, by letter, directed them to make temporarily-modified loan payments in August and September 2009, after which time PHH would review the loan for a permanent modification. The plaintiffs did as directed and, after not hearing from PHH, continued to pay the modified payment amount in October and November 2009. In December 2009, the plaintiffs allege, PHH sent them a letter denying a permanent loan modification. Then, in January 2010, PHH foreclosed. Considering these allegations in a light most favorable to the plaintiffs, the Court finds that the plaintiffs have sufficiently alleged a breach of contract claim based upon the implied covenant of

good faith and fair dealing to survive a 12(b)(6) motion to dismiss.[3]  Accordingly, Count I **MAY PROCEED** insofar as it is based upon the implied covenant of good faith and fair dealing.

### C.  Count II: Estoppel

In Count II, the plaintiffs claim that they reasonably relied to their detriment on PHH's representations that the payment of $1,600 in December 2009 brought the account current. As such, the plaintiffs ask the Court to set aside the January 12, 2010, foreclosure sale.

In their motions, the defendants argue that the plaintiffs have failed to state a claim upon which relief may be granted.  Specifically, the defendants contend that estoppel is not a cause of action, but an equitable defense.  In response, the plaintiffs argue that estoppel has been recognized as a cause of action, but that they have pled Count II as an equitable defense.  In this regard, the plaintiffs argue that they are not precluded from asserting the defense of estoppel where the defendants have wrongfully foreclosed but did not sue the plaintiffs.  In reply, the defendants contend that the plaintiffs' failure to articulate their cause of action in Count II requires dismissal.

Upon careful consideration of the above, this Court finds that the plaintiffs have failed to state a claim for estoppel upon which relief may be granted.  The Court is aware

---

[3]The Court notes that any argument by the defendants that their express right to foreclose trumps the implied duty to exercise their discretion in good faith is properly construed as a defense not before this Court on a 12(b)(6) motion to dismiss.  In this regard, the Court further notes that, upon the completion of discovery, the plaintiffs' burden of presenting a genuine issue of material fact on the issue of bad faith will be a heavy one. See **Benito v. Indymac Mortg. Serv.**, 2010 WL 2130648, *7 (D. Nev. May 21, 2010) (granting summary judgment in favor of defendant on nearly identical implied covenant of good faith and fair dealing claim because, "No contract term in the loans required OneWest to engage in loan modification, and it would not breach the covenant for OneWest to refuse to take on an additional obligation it was not required to undertake in the contract itself.").

13

of no case law in which West Virginia recognizes estoppel as a cause of action rather than as an affirmative defense. More importantly, the plaintiffs appear to concede that they "have pled the [estoppel] count as an equitable defense." ([Doc. 10] at 13). As a defense, equitable estoppel has no place in the plaintiffs' Complaint. Accordingly, the Court finds that Count II is **DISMISSED**.

### D. Count III: WVCCPA

In Count III, the plaintiffs claim that the defendants committed three (3) acts in violation of W.Va. Code § 46A-2-127, which generally prohibits a debt collector from using any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims. First, the plaintiffs allege that PHH falsely represented that a payment of $1,600 in December 2009 would bring their account current. Next, the plaintiffs allege that PHH falsely represented in one letter that they were eleven (11) months behind in their payments and in another that they were twelve (12) months behind.

In their motions, the defendants argue that Count III should be dismissed for failure to state a claim upon which relief may be granted. Specifically, the defendants argue that misstating the amount needed to bring a loan current and the number of months a borrower is past due are not violations of W.Va. Code § 46A-2-127(d), which prohibits any false representation of the character, extent, or amount of a claim. The character of the debt was never represented to be anything other than a mortgage loan. Moreover, the amount necessary to cure the default or the number of delinquent months is not a false representation of the extent or amount of PHH's claim against the plaintiffs. Upon the plaintiffs' default, the amount and extent of the claim was the entire principal plus accrued

interest and charges.

In response, the plaintiffs argue that Count III should proceed as a plausible claim. In support of their argument, the plaintiffs cite a provision of the Deed of Trust, which allowed the plaintiffs to cure a default up until five (5) days prior to the foreclosure sale. The plaintiffs also dispute that PHH could have accelerated the note given that a temporary loan modification had been extended.

In reply, the defendants reassert their previous arguments, providing the following illustration: "If Plaintiffs had to pay $2,000.00, for example, to reinstate, but the amount they owed because of acceleration was $85,000.00, clearly the amount of the claim which they owe is $85,000.00, not $2,000.00."  ([Docs. 11, 12] at 18, 12).

Upon careful consideration of the above, the Court finds that the plaintiffs have sufficiently stated a claim for violation of W.Va. Code § 46A-2-127.  In so finding, the Court relies upon the broad purpose of the WVCCPA, which the Supreme Court of Appeals of West Virginia once stated "represents a comprehensive attempt on the part of the Legislature to extend protection to the consumers and persons who obtain credit in this State and who obviously constitute the vast majority of our adult citizens." **Harless v. First Nat'l Bank**, 162 W.Va. 116, 125, 246 S.E.2d 270, 275 (1978); see also **Thomas v. Firestone Tire & Rubber Co.**, 164 W.Va. 763, 770, 266 S.E.2d 905, 909 (1980) (discussing the "broad remedial purposes" of the WVCCPA).

The introductory language of section 46A-2-127 provides in whole:

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. <u>Without limiting the general application of the foregoing</u>, the following conduct is deemed to violate this section . . ..

(Emphasis added).

Considering the broad scope of the WVCCPA as well as its general prohibition of fraudulent, deceptive, or misleading representations to collect claims, this Court need not decide whether the plaintiffs' factual allegations specifically state claims of misrepresentations of the character, extent, or amount of a claim. Instead, the Court finds that the plaintiffs have sufficiently pled a violation of the introductory language of section 46A-2-127, which is not limited by the conduct listed in its subsections.[4] Accordingly, the Court finds that Count III **MAY PROCEED**.

### E. Count IV: Negligence

In Count IV, the plaintiffs claim that by misrepresenting the amount necessary to cure default and proceeding to foreclose, the defendants breached their duty to the plaintiffs "to provide accurate information about the status of their loan account and to provide accurate notice of their payment due." ([Doc. 3-1] at ¶ 35). These actions, the plaintiffs allege, were negligent.

In their motions, the defendants argue that Count IV should be dismissed for failure to state a claim upon which relief may be granted. Specifically, the defendants argue that they owed the plaintiffs no duty to provide accurate account information and accurate notice of their payment due. Instead, under the Deed of Trust, making timely payments is solely the plaintiffs' obligation. In fact, the defendants emphasize, a lender owes no fiduciary duty to the borrower absent a special relationship. In response, the plaintiffs argue that Count IV should proceed against PHH based upon their special relationship.

---

[4]In this regard, the Court notes that Count III alleges violations of W.Va. Code § 46A-2-127, without specifically referencing any of its subsections.

In particular, the plaintiffs argue: "By virtue of its position as loan servicer, PHH did have a special relationship with [the plaintiffs] to ensure that it provided accurate information as to the amount [they] needed to reinstate and to foreclose only when the borrowers had failed to exercise their right to reinstate the loan . . .." ([Doc. 10] at 16). In reply, the defendants present two arguments in favor of dismissal. First, PHH argues that no special relationship exists between a servicer and a borrower. Second, Fannie Mae argues that any duty it has arises solely out of the Deed of Trust.

Upon careful consideration of the above, this Court finds that the plaintiffs have failed to state a claim for negligence upon which relief may be granted. In so concluding, the Court finds no special relationship among the parties that creates the duty alleged to have been breached.

In West Virginia, a plaintiff "cannot maintain an action in tort for an alleged breach of a contractual duty." **Lockhart v. Airco Heating & Cooling**, 211 W.Va. 609, 614, 567 S.E.2d 619, 624 (2002). Instead, "[t]ort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the *relationship of the parties*, rather than from a mere omission to perform a contract obligation." **Id.** (emphasis added). The Supreme Court of Appeals of West Virginia refers to this relationship as a "special relationship." *See e.g.*, **Aikens v. Debow**, 208 W.Va. 486, 499, 541 S.E.2d 576, 589 (2000); **Eastern Steel Constructors, Inc. v. City of Salem**, 209 W.Va. 392, 398, 549 S.E.2d 266, 272 (2001); **Glascock v. City Nat'l Bank of West Virginia**, 213 W.Va. 61, 66, 576 S.E.2d 540, 545 (2002). As the **Aikens**, **Eastern**, and **Glascock** opinions noted, "[t]he existence of a special relationship will be determined largely by the extent to which the

particular plaintiff is affected differently from society in general." *Id.* In the lender-borrower context, courts consider whether the lender has created a "special relationship" by performing services not normally provided by a lender to a borrower. *See Glascock*, 576 S.E.2d at 545-56; *Willis v. Countrywide Home Loans Servicing, L.P.*, 2009 WL 5206475, *5 (D. Md. Dec. 23, 2009).

In the instant case, the plaintiffs fail to allege that either defendant provided a service not normally provided by a lender or its servicer. Most of the plaintiffs' factual allegations relate to PHH (servicer), as the plaintiffs seek to hold Fannie Mae (lender/holder) liable under a theory that PHH acted as its agent. For example, the plaintiffs allege that PHH accepted their monthly mortgage payments and discussed their eligibility for a loan modification. The plaintiffs further allege that PHH granted a loan temporary modification but denied a permanent modification. Finally, the plaintiffs allege that PHH foreclosed on their property. These are services normally provided by a loan servicer for a borrower. As such, the plaintiffs have failed to plead a special relationship which creates a duty sounding in tort. Accordingly, the Court finds that Count IV is **DISMISSED**

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant Federal National Mortgage Association's Motion to Dismiss **[Doc. 4]** and Defendant PHH Mortgage Corporation's Motion to Dismiss **[Doc. 6]** should be, and hereby are, **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: September 16, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE