**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

CASEY J WARDEN, and
KATHY D. WARDEN,

    Plaintiffs,

v.                                                          Civil Action No. 3:10-CV-75
                                                                  (BAILEY)

PHH MORTGAGE CORPORATION,
and FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Currently pending before this Court are Defendant PHH Mortgage Corporation's Motion for Summary Judgment [Doc. 71] and Defendant Federal National Mortgage Association's Motion for Summary Judgment [Doc. 74], both filed May 16, 2010. The plaintiffs responded on June 10, 2011 [Doc. 87], and the defendants replied on June 28, 2011 [Docs. 95 & 97]. This Court has reviewed the record and the motions and, for the reasons set out below, finds that the defendants' motions should be **GRANTED**.

**BACKGROUND**

I. **Factual History**

    A. **Undisputed Material Facts**

The plaintiffs, Casey and Kathy Warden, were divorced in 1997. Nevertheless, after inheriting a home in Harpers Ferry, West Virginia, from her father in 2001, Ms. Warden deeded a half interest in the property to Mr. Warden. In return, Mr. Warden agreed to seek

1

a mortgage loan whereby he would share the cash-back proceeds with Ms. Warden.

On August 27, 2007, Mr. Warden entered into a loan agreement with PHH Mortgage Corporation ("PHH"). ([Doc. 71-1] at 1). The loan had a starting principal balance of $134,000.00 and a fixed interest rate of 7.250%, which provided for a monthly payment of $914.12, beginning on October 1, 2007. (Id.). The loan was secured by a Deed of Trust [Doc. 71-2] on the plaintiffs' property and provided for approximately $55,000.00 in cash-back proceeds.

After making three timely payments of $1,056.93, an amount which included taxes and insurance, Mr. Warden defaulted on the loan by tendering a late January 2008 payment and by failing altogether to make a February 2008 payment. By the end of 2008, Mr. Warden was one month behind on the loan, a delinquency which he compounded by failing to make the first five make payments of 2009. ([Doc. 71-5] at 6). In April 2009, Mr. Warden requested the assistance of PHH to cure his delinquency. (Id. at 3).

By letter dated May 21, 2009, PHH invited Mr. Warden to apply for a loan modification pursuant to the Home Affordable Modification Program ("HAMP") [Doc. 71-7]. The enclosed "trial period plan" directed Mr. Warden to make modified payments of $779.30 in July, August, and September 2009, after which time PHH would review his loan for a permanent modification. (Id. at 8). Mr. Warden signed and returned the application on May 31, 2009 [Doc. 71-8], and subsequently made the three trial payments. ([Doc. 71-5] at 7-8). However, by letter dated October 1, 2009, PHH denied Mr. Warden's HAMP application, finding that he was ineligible for the program because he did not reside at the property securing the loan [Doc. 71-10]. Nevertheless, Mr. Warden made one more payment in the trial amount during October 2009. ([Doc. 71-5] at 7-8).

By letter dated December 8, 2009, the Trustee under the Deed of Trust notified the plaintiffs that PHH demanded payment of $11,574.86 from Mr. Warden to cure his default. ([Doc. 71-11] at 2). A week later, the Trustee sent a second letter dated December 16, 2009, which demanded payment of $12,627.12 to prevent a foreclosure scheduled for January 12, 2010. (Id. at 8). On January 12, 2010, the Federal National Mortgage Association ("Fannie Mae") acquired the plaintiffs' property at a foreclosure sale for the sum of $145,183.72. ([Doc. 87-5] at 1).

Pursuant to the Deed of Trust, "[i]f [a] default is not cured on or before the date specified in the notice, Lender at its option . . . may invoke the power of sale . . .." (DOT at ¶ 22). However, "Borrower shall have the right to have enforcement of [the Deed of Trust] discontinued . . . [if Borrower] (a) pays Lender all sums which then would be due under [the Deed of Trust] and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing the [Deed of Trust] . . . ; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and Instrument, shall continue unchanged." (Id. at ¶ 19). In any case,"[i]f Lender invokes the power of sale, Lender or Trustee shall give Borrower . . . notice of Lender's election to sell the Property." (Id. at ¶ 22).

**B.    Disputed Material Facts**

According to Mr. Warden's deposition testimony, PHH sent him correspondence in December 2009 that indicated his application for a loan modification had been denied. ([Doc. 71-4] at 21). The letter further provided that Mr. Warden should pay $1,052.26 (original payment amount) for his December 2009 payment, plus: (1) approximately $300.00 for the November 2009 payment and (2) a $200.00 processing fee. (Id.). Before

3

the end of December 2009, Mr. Warden tendered to PHH a payment of $1,600.00, which PHH represented to be sufficient to bring his loan current. (Id.). Based upon this representation, the plaintiffs believed the foreclosure sale would be cancelled upon payment of the amount requested. (Id.).

According to the director of PHH's Homeowner Assistance Team, "no documents of any kind were sent by PHH to Mr. Warden in December 2009." ([Doc. 71-5] at ¶ 17). Specifically, "PHH did not send any document to Mr. Warden in December 2009 directing him to pay his full December 2009 payment, the difference between the reduced payment he sent to PHH in November 2009 and his full monthly payment, plus a $200.00 processing fee." (Id. at ¶ 18). Similarly, "PHH did not send any document to Mr. Warden at any time informing him that a payment of $1,600.00 would bring him current on his Mortgage Loan, nor did PHH send Mr. Warden a document at any time informing him that a payment of $1,600.00 would be sufficient to reinstate his Mortgage Loan." (Id. at ¶ 21).

## II.     Procedural History

### A.     Complaint and Removal

On June 28, 2010, the plaintiffs brought suit in the Circuit Court of Jefferson County, West Virginia, against PHH and Fannie Mae (the "defendants"). The Complaint [Doc. 3-1] contained four causes of action: (Count I) breach of contract; (Count II) estoppel; (Count III) violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W.Va. Code § 46A-1-101, *et seq.*; and (Count IV) negligence. On August 6, 2010, the defendants removed the above-styled action to the United States District Court for the Northern District of West Virginia based upon diversity jurisdiction [Doc. 3].

### B. Defendants' Motions to Dismiss

On August 13, 2010, the defendants moved to dismiss the plaintiffs' Complaint for failure to state a claim [Docs. 4, 6]. By Order entered September 16, 2010 [Doc. 13], this Court granted in part and denied in part the defendants' motions.

In granting the defendants' motions, this Court dismissed the plaintiffs' negligence claim (Count IV) for failure to plead a special relationship, and the plaintiffs' estoppel claim (Count II) as more properly taking the form of an equitable defense. (Id. at 13-14, 16-18).

In denying the defendants' motions, this Court first determined that the plaintiffs had sufficiently pled the existence of an agency relationship between Fannie Mae and PHH, as holder and creditor/servicer. (Id. at 7-9). Next, this Court held that the plaintiffs had adequately pled an express breach of contract and a breach of the implied covenant of good faith and fair dealing (Count I). (Id. at 9-13). First, this Court found that the plaintiffs stated an express breach of contract claim by alleging that PHH failed to fulfill its promise to consider the plaintiffs' loan current upon payment of $1,600.00 in December 2009. (Id. at 10). Second, this Court found that the plaintiffs had sufficiently alleged that PHH had exercised its discretion to deny a loan modification and instead seek foreclosure in bad faith. (Id. at 10-13). Finally, this Court concluded that the plaintiffs adequately pled violations of the introductory language of W.Va. Code § 46A-2-127, which generally prohibits a debt collector from using any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims (Count III). (Id. at 14-16).

### C. PHH's Motion for Judgment on the Pleadings

On December 10, 2010, PHH moved for judgment on the pleadings [Doc. 20], reasserting that Count I (Breach of Contract) and Count III (WVCCPA) fail to state claims

5

upon which relief may be granted. First, PHH argued that this Court *sua sponte* found that the parties established a "new" agreement in their loan modification discussions that is unsupported by consideration. Second, PHH argued that the plaintiffs failed to plead the existence of a contract between them and PHH, which assigned its lender rights to Fannie Mae while retaining servicing rights. ([Doc. 21] at 2-7). Third, PHH argued that the WVCCPA does not provide a private right of action against non-creditor debt collectors. (Id. at 7-13). By Order entered February 3, 2011 [Doc. 31], this Court denied PHH's motion.

In denying judgment on Count I (Breach of Contract), this Court first rejected PHH's argument that its alleged agreement to consider Mr. Warden current was unsupported by consideration. (Id. at 8-9). Specifically, this Court found that "valuable consideration exists in that the plaintiffs undertook a responsibility to continue paying their loan after default in exchange for PHH's promise to consider their loan current." (Id. at 9). Next, this Court disagreed that PHH could not have breached any covenant of good faith and fair dealing implied the Deed of Trust after allegedly assigning its lender rights to Fannie Mae. (Id. at 10). In particular, this Court found "no reason why the principles of agency law could not provide a basis for binding PHH, the assignor-servicer, to the servicing provisions of a Deed of Trust now held by Fannie Mae, the assignee-mortgagee." (Id.) (footnote omitted).

In denying judgment without prejudice on Count III (WVCCPA), this Court rejected as premature PHH's argument that the WVCCPA provides no private right of action against a non-creditor debt collector. (Id. at 10-11). In so doing, this Court noted that the Supreme Court of Appeals of West Virginia had yet to answer an identical question certified in **Barr v. NCB Management Services, Inc.**, 2010 WL 3730197 (N.D. W.Va. Sept. 20, 2010). (Id.

6

at 11).

### D. Defendants' Instant Motions for Summary Judgment

After the close of discovery on April 22, 2011, the defendants now move for summary judgment on the plaintiffs' remaining claims [Docs. 71 & 74]. In its motion, PHH argues that it is entitled to summary judgment on the plaintiffs' claims for breach of contract (Count I) for three reasons. First, PHH asserts its failure to grant a loan modification cannot constitute a breach of the Deed of Trust because it had no contractual duty to provide the modification under the agreement. ([Doc. 72] at 8). Second, PHH contends that no reinstatement agreement is enforceable between the parties because there is no genuine issue of material fact that PHH offered to reinstate Mr. Warden's loan for $1,600.00, and even if so, said agreement would be unsupported by consideration and barred by the statute of frauds. (Id. at 8-15). Third, PHH argues that Mr. Warden no implied right to good faith consideration of a loan modification, and even if so, the plaintiffs have failed to make a showing of bad faith. (Id. at 15-20).

Next, PHH argues that it is entitled to summary judgment on the plaintiffs' WVCCPA claims. Specifically, PHH argues that the plaintiffs have no WVCCPA claim based upon the Trustee's notices because the delinquency representations are accurate, PHH cannot be held liable for the Trustee's misstatements, and the plaintiffs have failed to establish causation and damages. (Id. at 21, 23-27). Similarly, PHH contends that the plaintiffs have no WVCCPA claim based upon its alleged representation that $1,600.00 was sufficient for reinstatement because the plaintiffs have failed to present a genuine issue that such a reinstatement offer was made. (Id. at 22-23).

Finally, PHH argues that it is entitled to summary judgment on all of Ms. Warden's

7

claims because she did not sign the Note. (Id. at 28-30).

In a separate motion, Fannie Mae argues that the plaintiffs have failed to present a genuine issue of material fact that PHH acted as its agent as opposed to an independent contractor. ([Doc. 75] at 2). Even assuming the existence of an agency relationship, Fannie Mae argues that the plaintiffs have no underlying claim against PHH for which it could be held liable as a principal. (Id. at 3).

In response, the plaintiffs contend that they have presented triable issues on their agency theory, their breach of contract claims, and their WVCCPA claims [Doc. 87]. First, the plaintiffs assert that the defendants' admissions that their relationship is governed by a servicing agreement and that Fannie Mae maintains an office at PHH's headquarters are sufficient to establish the existence of an agency relationship at this stage. (Id. at 6-7). Next, the plaintiffs argue that Ms. Warden is an appropriate claimant as a signatory to the Deed of Trust. (Id. at 8-9).

With regard to Count I (Breach of Contract), the plaintiffs "abandon their claim that Defendants exercised their discretion to consider them for a loan modification in bad faith," conceding that Mr. Warden was ineligible for a HAMP modification.[1] (Id. at 9 n.3). However, the plaintiffs maintain that the defendants breached the Deed of Trust by misrepresenting the amount necessary for reinstatement and by exercising their discretion to foreclose in bad faith after representing that a payment of $1,600.00 would reinstate the loan. (Id. at 9). In this regard, the plaintiffs argue that Mr. Warden's deposition testimony,

---

[1]Accordingly, Count I (Breach of Contract) is hereby **DISMISSED** to the extent it relies upon a claim that the defendants exercised their discretion to consider the plaintiffs for a loan modification in bad faith.

8

supported by the fact that he tendered a payment of $1,600.00, suffices to survive summary judgment. (Id. at 11). Moreover, the plaintiffs argue that the reinstatement agreement is supported by consideration and falls within an exception to the statute of frauds. (Id. at 11-13). Similarly, the plaintiffs contend that their reinstatement agreement with PHH creates a triable issue that PHH foreclosed in bad faith. (Id. at 13-15).

As for Count III (WVCCPA), the plaintiffs argue that their three WVCCPA claims should survive summary judgment. (Id. at 15). First, the plaintiffs maintain that they have presented a genuine issue that PHH falsely represented that a payment of $1,600.00 would be sufficient to reinstate Mr. Warden's loan. (Id. at 16). Second, the plaintiffs contend that the arrearage amounts in the Trustee's notices are inaccurate and that PHH should be held liable for providing the Trustee with those incorrect numbers. (Id. at 16-19).

On June 29, 2011, the defendants filed replies [Docs. 95 & 97], supplementing their previous arguments in support of summary judgment. For example, PHH argues that Mr. Warden's deposition testimony concerning the December 2009 reinstatement letter is precluded by the best evidence rule. ([Doc. 95] at 13 n.17). In addition, Fannie Mae argues that a service agreement should not be dispositive on the issue of agency. ([Doc. 97] at 2-3).

A pretrial conference is currently scheduled for August 8, 2011, to be followed by a jury trial on August 23, 2011 [Doc. 17].

## **DISCUSSION**

### I. **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial-- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Id.** at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323-25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted).

Finally, to preclude summary judgment, the non-movant must cite to admissible evidence to show that a genuine issue of material fact exists. See Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

**II.    Analysis**

In their motions, the defendants argue that they are entitled to summary judgment on both of the plaintiffs' remaining counts, while the plaintiffs argue that they have

presented genuine issues of material fact which preclude summary judgment on either count. Below, the Court will consider each count, in turn.

### A. Count I: Breach of Contract

In Count I, the plaintiffs allege that PHH, as an agent of Fannie Mae, breached the DOT by: (1) "representing to Plaintiffs to make an amount to bring their account current, then foreclosing after payment of this amount" and (2) "exercising their discretion to foreclose in bad faith." ([Doc. 3-1] at ¶ 23). In response to the instant motions, the plaintiffs contend that they have presented a genuine issue of material fact as to both claims based upon Mr. Warden's deposition testimony that he received a letter in December 2009 representing that a payment of $1,600.00 would reinstate his loan. PHH replies that Mr. Warden's deposition testimony is inadmissible pursuant Federal Rule of Evidence 1002, commonly referred to as the "best evidence rule." This Court agrees and, as a result, finds that the plaintiffs have failed to present a genuine issue of material fact on Count I.

"Federal Rule of Evidence 1002 provides in pertinent part: 'To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required.' As the Rule's language states, the Rule applies to the circumstance where the proponent seeks '*to prove the content*' of a document. The Rule exists to afford guarantees against inaccuracies and fraud by requiring that *the original* of the document be offered, subject to exceptions in Rule 1003 (allowing the use of duplicates) and Rule 1004 (providing exceptions to the requirement of an original). Thus it is more accurate to refer to Rule 1002 as the 'original document rule,' not the 'best evidence rule.'" **United States v. Smith**, 566 F.3d 410, 413 (4th Cir. 2009) (internal citations omitted) (emphasis in original).

11

Here, Mr. Warden testified at his deposition that PHH sent him a letter offering to reinstate his loan. (See e.g., [Doc. 71-4] at 21). Insofar as he seeks "to prove the content" of the letter, Mr. Warden must produce the original letter unless he can establish an exception to the "original document rule." When asked to produce the letter at his deposition, Mr. Warden testified that he was "having a problem locating the letter." ([Doc. 71-4] at 21). Accordingly, Mr. Warden appears to be claiming that he has lost the letter.

Pursuant to Federal Rule of Evidence 1004, "[t]he original is not required, and other [secondary] evidence of the contents of a writing, recording, or photograph is admissible if . . . [a]ll originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith . . .." Fed. R. Evid. 1004(1). "The proponent of the secondary evidence has the burden of proving loss or destruction, which are preliminary facts for the court to determine under Rule 104(a). Thus, the proponent must show by a preponderance of the evidence that all originals have been lost or destroyed. This means that the burden is not sustained where the proponent merely casts doubt as to the existence of the original." Wright & Gold, *Federal Practice and Procedure*: Evidence § 8014. As the Fourth Circuit once explained, "the party who offers secondary evidence of the contents of a document alleged to be lost must go farther than to show that it is doubtful whether or not the document exists; he must demonstrate to the satisfaction of the court that although it once existed, it cannot be found despite a diligent and unsuccessful search and that there is no reasonable probability that it has been designedly withheld or suppressed." *Sellmayer Packing Co. v. Commissioner*, 146 F.2d 707, 710 (4th Cir. 1944).

In the instant case, this Court is unsatisfied both that Mr. Warden cannot find the original December 2009 letter "despite a diligent and unsuccessful search" and that "there

is no reasonable probability" that Mr. Warden has "designedly withheld or suppressed" the letter. First, when given the opportunity to explain his failure to produce the letter, Mr. Warden left much to the imagination. By stating only that he was "having a problem locating the letter," Mr. Warden failed to offer any insight into the diligence of his efforts. For example, Mr. Warden failed to describe the places searched, the persons inquired of, and the overall vigor of his search, which courts have identified as factors pertinent to determining the sufficiency of an unsuccessful search for originals. *See* **United States v. Standing Soldier**, 538 F.2d 196, 202 (8th Cir. 1976) (places); **O'Donnell v. United States**, 91 F.2d 14, 23 (9th Cir. 1939) (persons); **Cartier v. Jackson**, 59 F.3d 1046, 1048 (10th Cir. 1995).

Second, based upon other record evidence, this Court hesitates to find that there is no reasonable probability of bad faith on the part of Mr. Warden. For example, Mr. Warden testified at his deposition that he received a letter from the Trustee "around the date" that he received the letter from PHH offering to reinstate his loan for $1,600.00. ([Doc. 71-4] at 17). The Trustee's letter, dated December 8, 2009, notified Mr. Warden that PHH demanded payment of $11,574.86 to cure his default. ([Doc. 71-11] at 2). Given its proper context, therefore, Mr. Warden claims that he is "having a problem locating" a letter that offered to reinstate his mortgage loan for nearly 14% of the amount of his delinquency. This claim, especially in light of the fact that Mr. Warden successfully produced nearly three hundred (300) pages of documents in the plaintiffs' Rule 26(a)(1) disclosures, causes this Court concern as to whether Mr. Warden has "designedly withheld or suppressed" the letter.

For the above reasons, this Court concludes that Mr. Warden has failed to meet his

burden of showing that his deposition testimony concerning the contents of the letter in question is admissible under one of the exceptions to the "original document rule."[2] To date, the plaintiffs have failed to produce the original letter upon which their breach of contract claims rely. As such, this Court finds that the plaintiffs have failed to present a genuine issue of material fact on Count I. Accordingly, Count I (Breach of Contract) is hereby **DISMISSED**.

### B. Count III: WVCCPA

In Count III, the plaintiffs claim that PHH, as an agent of Fannie Mae, committed three (3) acts in violation of W.Va. Code § 46A-2-127, which generally prohibits a debt collector from using any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims. First, the plaintiffs allege that PHH falsely represented that a payment of $1,600.00 in December 2009 would bring Mr. Warden's loan current. Next, the plaintiffs allege that PHH falsely represented in one December 2009 notice that they were eleven (11) months behind in their payments and in another that they were twelve (12) months behind. The Court will consider each, in turn.

#### 1. PHH's Representation in December 2009 Letter

Based upon this Court's ruling above that the plaintiffs are precluded from offering Mr. Warden's testimony to prove the contents of the original December 2009 letter, this

---

[2]To be clear, this Court makes no finding concerning the existence of the letter in question, as that question is one for a jury. See Fed. R. Evid. 1008(a). Instead, assuming the existence of the letter for purposes of summary judgment, this Court has determined that Mr. Warden has failed to establish that the original letter was lost or destroyed without bad faith. *See **Seiler v. Lucasfilm, Ltd.**,* 613 F.Supp. 1253, 1260 (N.D. Ca. 1984) ("Rule 1004 read in conjunction with Rule 1008 makes the determination of whether the proponent of the evidence has established that all the originals were lost or destroyed without bad faith a question for the court.").

Court concludes that the plaintiffs have failed to present a genuine issue of material fact that the letter contained a false representation. Accordingly, Count III (WVCCPA) is hereby **DISMISSED** to the extent it relies upon any representation made in the December 2009 letter.

### 2. Trustee's Representations in December 2009 Notices

In his December 8, 2009, Notice of Right to Cure, the Trustee represented that Mr. Warden was eleven (11) months behind on his loan. ([Doc. 71-11] at 2). In his December 16, 2009, Notice of Foreclosure Sale, the Trustee represented that Mr. Warden would be twelve (12) months behind by the date of the foreclosure sale, January 12, 2010. (Id. at 8). The plaintiffs argue that these representations are inaccurate because they fail to take into account $1,012.68 that PHH had in suspense. This Court disagrees.

Pursuant to the Note, Mr. Warden would be in default "if [he] d[id] not pay the *full amount* of each monthly payment." (Note, at ¶ 6) (emphasis added). In other words, Mr. Warden would be considered delinquent for each month that he failed to make a full payment. Based upon the following undisputed facts, this Court finds that both of the challenged representations were accurate.

As of May 2, 2009, Mr. Warden was six (6) months delinquent, including December 2008 through May 2009. ([Doc. 71-5] at ¶ 4). At the end of May 2009, Mr. Warden entered into a trial modification agreement, which included trial payments of $779.30 for July, August, and September 2009. ([Doc. 71-7] at 8). However, the agreement provided that "[t]he Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment

15

is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full."  (Id.).

Before making his first trial payment, Mr. Warden's June 2009 payment became delinquent, bringing the number of months in delinquency to seven (7).  ([Doc. 71-5] at ¶ 7).  Mr. Warden made his first trial payment at the end of June, an amount which PHH placed in suspense.  (Id.). Prior to making his second trial payment, Mr. Warden's July and August 2009 payments became delinquent, increasing his delinquency to nine (9) months. (Id. at ¶ 8).  Upon making his second trial payment in August, PHH had $1558.60 in suspense.  (Id. at ¶ 9).  Accordingly, PHH applied a full monthly payment ($1052.26) to cover the December 2008 delinquency, leaving $506.34 left in suspense and lowering his number of months delinquent to eight (8).  (Id.).  Before making his third trial payment, Mr. Warden's September 2009 payment became delinquent, pushing the number of months delinquent  to nine (9).  (Id. at ¶¶ 10-11).  Upon making his third trial payment, PHH had $1285.64 in suspense.  (Id. at ¶ 11).  As agreed, PHH applied a full monthly payment to cover the January 2009 delinquency, leaving $233.38 in suspense and nine (8) months of delinquency.  (Id.).

By letter dated October 1, 2009, PHH denied Mr. Warden's HAMP application, finding that he was ineligible for the program because he did not reside at the property securing the loan [Doc. 71-10].  Nevertheless, after missing his October 2009 payment which brought the number of months delinquent to nine (9), Mr. Warden made one more payment in the trial amount during October 2009.  ([Doc. 71-5] at ¶ 12).  After that trial payment, PHH had $1,012.68 in suspense.  (Id.).  However, because that amount falls

$39.58 short of a full monthly payment, Mr. Warden remained nine (9) months delinquent on his loan. (Id.). Mr. Warden then missed his November and December 2009 payments, increasing his months in delinquency to eleven (11). (Id. at ¶¶ 13-14).

According to these undisputed facts, therefore, the Trustee's December 2009 notices were accurate in stating that Mr. Warden was eleven (11) months delinquent on December 8, 2009, and would be twelve (12) months delinquent by January 12, 2010. That PHH had $1,012.68 in suspense does not change the fact that Mr. Warden was delinquent under the terms of his Note for eleven (11) and twelve (12) *full* monthly payments, respectively. As such, this Court finds that the plaintiffs have failed to present a genuine issue of material fact on Count III. Accordingly, Count III (WVCCPA) is hereby **DISMISSED**.

## CONCLUSION

For the foregoing reasons, the Court finds that the defendants' Motions for Summary Judgment **[Docs. 71 & 74]** should be, and hereby are, **GRANTED**. Accordingly, the plaintiffs' Complaint **[Doc. 3-1]** is **ORDERED DISMISSED WITH PREJUDICE**, and the above-styled action is **ORDERED STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: July 1, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE